FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 07, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LYLE FLOYD, a single person,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF GRAND COULEE; GRAND COULEE POLICE CHIEF J.D. TUFTS; SERGEANT GARY W. MOORE; OFFICER JOSEPH HIGGS; OFFICER ADAM FLORENZEN; 1-10 JOHN and JANE DOES,<br><br>    Defendants. | No. 2:21-CV-00211-SAB<br><br>**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE** |

Before the Court is Defendants' Motion to Dismiss, ECF No. 10. The Court held a videoconference hearing on the motion on September 28, 2021. Plaintiff was represented by Douglas Phelps, who appeared by videoconference. Defendants were represented by Thomas Miller and Stuart Cassel, both of whom appeared by telephone—Mr. Miller presented arguments on behalf of Defendants.

Defendants request that the Court dismiss Plaintiff's § 1983 and *Monell* claims; Washington State constitutional claims; excessive force, assault and battery, and unlawful imprisonment claims; negligent training, supervision, and retention claim; and malicious prosecution claim. The Court took the motion under

advisement. Having reviewed the briefing, the parties' oral arguments, and the relevant caselaw, the Court grants Defendants' Motion to Dismiss, dismisses Plaintiff's Complaint without leave to amend, and closes this case.

## Facts

The following facts are drawn from Plaintiff's Complaint, ECF No. 1. On or about April 16, 2016, Plaintiff Lyle Floyd was traveling on SR 174 in a black Toyota Tundra. Defendant Sergeant Gary W. Moore ("Sergeant Moore") stopped Plaintiff and asked him to roll down his window and provide his license, registration, and proof of insurance. Plaintiff refused to provide these documents to Sergeant Moore, stating that he had not violated laws and thus there was no legal basis for the stop.

Sergeant Moore told Plaintiff that the basis for the stop was that there were complaints about Plaintiff's speeding, both inside and outside of town. Plaintiff alleges that he subsequently learned that these complaints were from an unidentified citizen's phone call. However, in the moment, Plaintiff told Sergeant Moore than there was no way he would know how fast Plaintiff was driving outside of town and that he had not been speeding inside of town. Sergeant Moore repeated his request for Plaintiff's license, registration, and proof of insurance. Plaintiff once again refused and told Sergeant Moore that he was leaving because there was no basis for the stop.

Sergeant Moore told Plaintiff that he was not free to leave. Plaintiff still insisted that he was leaving, put his car into drive, and inched forward slightly. Once Sergeant Moore saw the vehicle move, he told Plaintiff that he was under arrest and ordered him to stop the vehicle.

Plaintiff alleges that Sergeant Moore opened his car door without permission and grabbed his thumb off the steering wheel, attempting to put a "goose neck wrist lock" on him. Plaintiff stopped the car, reached for his car door to try and

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE # 2**

1 keep Sergeant Moore from entering, and told Sergeant Moore that he did not have
2 the authority to open the door.
3   Plaintiff states that other officers, including Defendants Officer Joseph
4 Higgs ("Officer Higgs") and Officer Adam Florenzen ("Officer Florenzen"), then
5 arrived on the scene. Plaintiff alleges that Sergeant Moore told Officers Higgs and
6 Florenzen that Plaintiff was being uncooperative and was refusing to provide his
7 information. Plaintiff alleges that Sergeant Moore once again opened his car door
8 without permission and told Plaintiff that he was under arrest.
9   Officer Higgs walked to the other side of the vehicle, opened the passenger
10 door, and smelled a strong marijuana odor coming from the vehicle. Officer Higgs
11 also observed smoking devices visible in a storage area in the front of the center
12 console.
13   Sergeant Moore reached into Plaintiff's vehicle and grabbed his left arm to
14 restrain him. Plaintiff tensed up and pulled his arm away, telling Sergeant Moore
15 that he was not going to put Plaintiff into handcuffs. Sergeant Moore ordered
16 Plaintiff to relax, stop tensing, and to exit his vehicle. Meanwhile, Plaintiff alleges
17 that Officer Higgs pulled out his taser and was standing at the passenger side of the
18 vehicle. When Plaintiff still refused to exit, he alleges that Officer Higgs ordered
19 him to exit the vehicle, or he would be tased.
20   Plaintiff alleges that Sergeant Moore placed his vehicle in park and Officer
21 Higgs unbuckled his seatbelt. Plaintiff states that he placed his elbow on Officer
22 Higgs' hand and asked him not to tase him. Sergeant Moore instructed Plaintiff to
23 step out of the vehicle, turn around and face the vehicle, and place his hands
24 behind his back. When Plaintiff still refused to respond, Sergeant Moore placed
25 Plaintiff into a wrist lock to remove him from the vehicle.
26   Plaintiff locked his arm down to his side and placed his hand under his
27 buttock to resist Sergeant Moore. Sergeant Moore continued to try and pull
28 Plaintiff out of the vehicle. Plaintiff grabbed Sergeant Moore's wrist, on his arm

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE** # 3

that was performing the wrist lock. Plaintiff alleges that Officer Higgs then fired his taser darts at him, while Sergeant Moore and Officer Florenzen attempted to remove Plaintiff from his vehicle.

Plaintiff alleges that he was left seizing and confused from the taser activation, and thus was removed from the vehicle—but he states that he struggled with Officer Florenzen and Sergeant Moore by flailing his arms and twisting his torso. Plaintiff also states that he held onto the truck bed while Sergeant Moore and Officer Florenzen tried to get him to the ground. Officer Higgs witnessed the struggle, so he fired a second taser, using a drive stun technique on Plaintiff.

After the second taser, Plaintiff alleges that he lost his grip on the truck bed, so Sergeant Moore and Officers Higgs and Florenzen forced him on the ground. However, Plaintiff locked his arms to his side to try and prevent the officers from placing wrist restraints on him. Sergeant Moore warned Plaintiff that he was going to be tasered again if he did not stop resisting. At this point, Plaintiff placed his hands behind his back so that Sergeant Moore and Officer Florenzen could place him in wrist restraints and transport him to the Grand Coulee Police Department.

Once Plaintiff was at the Grand Coulee Police Department, Sergeant Moore checked Plaintiff's mouth for foreign objects. Sergeant Moore noted that Plaintiff's mouth had a green tint and that his taste buds were raised, which—based on Sergeant Moore's training and experience—indicated recent marijuana usage. Sergeant Moore attempted to take Plaintiff's blood to test for marijuana use, but Plaintiff refused to cooperate. Thus, Sergeant Moore applied for a search warrant for Plaintiff's blood, which Judge John Knodell of the Grant County Superior Court granted.

Plaintiff was transported to Coulee Medical Center for the blood draw. Plaintiff then became disruptive and made threats to the nursing staff. Sergeant Moore told Plaintiff that he could either cooperate or they would have to hold him down to draw his blood. Plaintiff continued to make threats, so Sergeant Moore

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE # 4**

and Officer Higgs placed Plaintiff in another goose neck wrist lock to get him to the table for the blood draw. Plaintiff still attempted to fight and climb off the table, so Sergeant Moore and Officer Higgs pinned Plaintiff to the table. Plaintiff finally decided to cooperate, so the nurse was able to perform the blood draw without further incident. Plaintiff was then transported to jail, where he was booked.

Plaintiff states that, in 2018, two years after the incident, he reviewed emails between Sergeant Moore, Officer Higgs, and defense attorney Marc Fedorak, which he alleges show that they conspired to avoid responsibility for tasing a civilian involved in a passive resistance to a minor traffic conviction. Plaintiff also alleges that there were emails between Sergeant Moore and Officer Florenzen, stating that they needed to review their interviews to "make sure their stories are not conflicting." ECF No. 1 at 13. Finally, Plaintiff alleges that the officers conspired to falsely document the incident in their police reports to avoid others discovering their use of excessive force in tasing Plaintiff.

**Procedural History**

Plaintiff filed his Complaint on July 16, 2021. ECF No. 1. In his Complaint, Plaintiff alleges the following claims: violations of his Fourth Amendment and Fourteenth Amendment rights under 42 U.S.C. § 1983 and *Monell* liability; violations of the Washington State Constitution; assault, battery, false arrest, and false imprisonment; negligent training, retention, and supervision; and malicious prosecution.

Defendants filed their Motion to Dismiss on August 9, 2021. ECF No. 10. The Court has not yet set a trial date in this matter.

**Legal Standard**

Fed. R. Civ. P. 12(b)(6) allows a party to move for dismissal if the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Dismissal under this rule is only proper if there is either a "lack of a

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE # 5**

cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When considering a Rule 12(b)(6) motion, the court accepts the allegations in the complaint as true and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). However, this does not require the Court "to accept as true legal conclusions couched as factual allegations." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Levit v. Yelp!, Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (requirements of notice pleading are met if plaintiff makes a short and plain statement of their claims). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The allegations must be enough to raise the right to relief above a speculative level. *Twombly*, 550 U.S. at 555.

### Discussion

In his Complaint, Plaintiff asserts five categories of claims: (1) violations of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 and *Monell* liability; (2) violations of his Washington State constitutional rights; (3) excessive force, assault and battery, and unlawful imprisonment; (4) negligent training, supervision, and retention; and (5) malicious prosecution. ECF No. 1.

Defendants argue that the Court should dismiss all these claims. First, Defendants argue that the Court should dismiss Plaintiff's § 1983 and *Monell* claims because they are barred by the three-year statute of limitations, which expired in 2019. Second, Defendants argue that the Court should dismiss Plaintiff's

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE # 6**

1  Washington State constitutional claims because the Washington State Constitution
2  does not create a cause of action for money damages unless there has been a
3  specific statutory authorization. Third, Defendants argue that the Court should
4  dismiss Plaintiff's excessive force, assault and battery, and unlawful imprisonment
5  because they are barred by the two-year statute of limitations, which expired in
6  2018.  Fourth, Defendants argue that the Court should dismiss Plaintiff's negligent
7  training, supervision, and retention claims because it is barred by the public duty
8  doctrine and because Plaintiff has failed to allege all the necessary elements to
9  show these claims. Finally, Defendants argue that the Court should dismiss
10 Plaintiff's malicious prosecution claim because Plaintiff has failed to allege all the
11 necessary elements for the claim. ECF No. 10.
12        Plaintiff in response argues that the Court should not dismiss his claims
13 because there is a factual issue regarding whether the statute of limitations should
14 be equitably tolled. Specifically, Plaintiff argues that Defendants conspired to
15 deceive him about the basis for the traffic stop and to justify their use of the
16 taser—Plaintiff states that Defendants were discussing this conspiracy and bad
17 faith deception in emails dated November 14 and 15, 2018. Thus, Plaintiff argues
18 that the three-year statute of limitations for his § 1983 and *Monell* claims should be
19 equitably tolled until November 15, 2021. ECF No. 11.
20        Defendants in reply argue that Plaintiff has only argued against dismissal of
21 his § 1983 claims, thereby conceding that all of his other claims can and should be
22 dismissed. However, even for Plaintiff's § 1983 and *Monell* claims, Defendants
23 argue that these must still be dismissed because (1) Plaintiff only cited state law to
24 support his equitable tolling arguments, but Plaintiffs' claims are under federal law
25 and (2) under federal law, the statute of limitations depends on Plaintiff's
26 knowledge of his injury and the unconstitutionality of Defendants' actions, not on
27 any subsequent misconduct from Defendants. Thus, Defendants argue that the
28

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE** # 7

Court should dismiss all of Plaintiff's claims with prejudice because amendment would be futile. ECF No. 12.

The Court grants Defendants' motion to dismiss. First, the Court finds that Plaintiff's § 1983 and *Monell* claims are barred under the three-year statute of limitations. Wash. Rev. Code Ann. § 4.16.080(2); *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). Under federal law, the statute of limitations begins to run "when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981) (citing *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980)). Here, Plaintiff was aware of any injuries he sustained from Defendants' actions on April 16, 2016—indeed, Plaintiff insisted to the officers during the incident that there was no legal basis for his stop and actively resisted arrest. Thus, because the three-year statute of limitations ran out on April 16, 2021, and because Plaintiff did not file his Complaint until July 16, 2021, Plaintiff's federal claims are time-barred and therefore dismissed.

Second, for the same reasons, the Court finds that Plaintiff's state law claims for excessive force, assault and battery, and unlawful imprisonment are barred under the two-year statute of limitations. Wash. Rev. Code § 4.16.100(1); *Boyles v. City of Kennewick*, 62 Wash. App. 174, 176 (1991) (finding that the two-year statute of limitation for assault also applies to excessive force claims). Under Washington law, the statute of limitations begins to run when "the plaintiff knows or should know the relevant facts, whether or not the plaintiff also knows that these facts are enough to establish a legal cause of action." *Allen v. State*, 118 Wash. 2d 753, 758 (1992). Thus, because Plaintiff knew of the relevant facts on April 16, 2016, the Court dismisses Plaintiff's excessive force, assault and battery, and unlawful imprisonment claims.

Third, the Court finds that Plaintiff has failed to sufficiently plead a valid claim under the Washington State Constitution. "Washington courts have

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE # 8**

consistently rejected invitations to establish a cause of action for damages based upon [Washington State] constitutional violations 'without the aid of augmentative legislation[.]'" *Blinka v. Washington State Bar Ass'n*, 109 Wash. App. 575, 591 (2001) (citing *Sys. Amusement, Inc. v. State,* 7 Wash. App. 516, 517 (1972)). Here, Plaintiff alleges that Defendants violated his rights pursuant to Article I, Sections 3, 7, 14, and 35 of the Washington State Constitution. However, Plaintiff does not plead any statutory cause of action that allows him to bring a lawsuit for violations of these constitutional rights. Thus, the Court dismisses Plaintiff's Washington State constitutional claims.

Fourth, the Court finds that Plaintiff's negligent training, supervision, and retention claim is barred by the public duty doctrine. To pursue a negligence claim, a plaintiff must allege that the defendant owed them a duty of care. However, Washington courts have stated that "governments, unlike private persons, are tasked with duties that are not legal duties within the meaning of tort law"—thus, courts must "carefully analyze the threshold element of duty in negligence claims against governmental entities." *Washburn v. City of Fed. Way*, 178 Wash. 2d 732, 753 (2013) (citing *Osborn v. Mason Cty.*, 157 Wash.2d 18, 27–28 (2006)). Thus, when a plaintiff asserts a negligence claim against a governmental entity, Washington courts apply the public duty doctrine, which states that "no liability may be imposed for a public official's negligent conduct unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general." *Cummins v. Lewis Cty.*, 156 Wash. 2d 844, 852 (2006) (quoting *Taylor v. Stevens Cty.*, 111 Wash.2d 159, 163 (1988)). Washington courts have found that the public duty doctrine bars negligence claims against governmental entities based on a breach of its general responsibilities to supervise, train, and retain law enforcement officers. *Fuller v. Lee*, No. C13-0563JLR, 2014 WL 6982519, at *13 (W.D. Wash. Dec. 9, 2014) (citing cases). Here, Plaintiff's negligence claim only implicates Defendants'

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE** # 9

general duty to the public to supervise, train, and retain their officers—Plaintiff does not allege that Defendants breached a duty that they owed to him specifically. Moreover, Plaintiff has not alleged that any exceptions to the public duty doctrine apply, such as legislative intent, the rescue doctrine, or special relationship. *Cummins*, 156 Wash.2d at 853 n.7. Thus, because Plaintiff has failed to sufficiently plead a valid claim for negligent training, supervision, and retention, the Court dismisses this claim.

Finally, the Court finds that Plaintiff has failed to sufficiently plead a valid claim for malicious prosecution. To prove a claim of malicious prosecution, a plaintiff must show five elements: (1) the defendant instituted and continued the allegedly malicious prosecution against the plaintiff; (2) there was a lack of probable cause for the initiation or continuation of the prosecution; (3) the prosecution was instituted or continued through malice; (4) the prosecution terminated on the merits in the plaintiff's favor or was abandoned; (5) the plaintiff suffered injury or damage as a result of the prosecution. *Bender v. City of Seattle*, 99 Wash. 2d 582, 593 (1983) (citing *Gem Trading Co. v. Cudahy Corp.*, 92 Wash.2d 956, 962–63 (1979)). For a state law claim of malicious prosecution, Washington courts have stated that a plaintiff must prove two additional elements: (6) arrest or seizure of property and (7) special injury. *Clark v. Baines*, 150 Wash. 2d 905, 912 (2004) (citing *Gem Trading*, 92 Wash.2d at 963–64). Here, Plaintiff has not alleged that a prosecution was instituted against him—he only alleges that he was transported back to jail after the blood draw and booked. Thus, because Plaintiff has failed to allege an essential element of malicious prosecution, the Court dismisses this claim.

Dismissal without leave to amend is proper only if it is absolutely clear that deficiencies in the complaint cannot be corrected by amendment. *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Courts should grant leave to amend unless amendment would be futile.

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE** # 10

*Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). A proposed amendment is futile when "'no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim.'" *Missouri ex rel. Koster v.* Harris, 847 F.3d 646, 656 (9th Cir. 2017) (quoting *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). Here, the Court finds that amendment would be futile because there is no set of facts that can be proved that would make Plaintiff's § 1983 and *Monell* claims timely. Moreover, to the extent that Plaintiff might be able to amend his other claims in a way that would make them viable, those claims should be refiled in state court, not in this Court.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss, ECF No. 10, is **GRANTED**.
2. Plaintiff's Complaint is **dismissed with prejudice**.
3. The District Court Clerk is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order, provide copies to counsel, and **close** the file.

**DATED** this 7th day of October 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND; CLOSING CASE** # 11